NOT FOR PUBLICATION                    (Docket Entry Nos. 6, 7)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

_____
                               :
CANDACE J. CAPOFERRI,          :
                               :
          Plaintiff,           :    Civil No. 04-4716 (RBK)
                               :
     v.                        :    **OPINION**
                               :
ROBERT CAPOFERRI, et al.,      :
                               :
          Defendants.          :
_____:


**KUGLER**, United States District Judge:

     In this diversity case, plaintiff Candace Capoferri
("Candace") sues her ex-husband, defendant Robert Capoferri
("Robert"), along with defendants Patricia Gatto,[1] Joseph
Capoferri ("Joseph"), and Frank Comparri, for fraud, conversion,
conspiracy, and accomplice liability.  Candace's claims arise out
of actions allegedly taken by the defendants during Candace and
Robert's 1999 divorce.  This matter comes before the Court upon
(1) Robert's motion to dismiss the Amended Complaint and (2)
Comparri's motion to join in Robert's motion.

     Robert moves to dismiss the Amended Complaint on four
grounds.  First, Robert argues that the Rooker-Feldman doctrine

_____
     [1] Candace's papers spell the name, at various times, as
"Gatto" and "Gatta."

precludes this Court from exercising jurisdiction over Candace's claims.  Second, Robert argues that "domestic relations are governed by state law."  Third, Robert argues that Candace has a remedy in the New Jersey courts.  Fourth, Robert argues that the statute of limitations has expired on Candace's claims.

For the reasons expressed in this opinion, (1) Comparri's motion to join in Robert's motion will be granted, and (2) Robert's motion to dismiss (in which Comparri joins) will be denied.

I.       **AMENDED COMPLAINT**

The following factual allegations are taken from the Amended Complaint and the exhibits attached to Robert's motion to dismiss.

Robert and Candace were married on August 12, 1995. Candace moved out of the marital home in late 1998.  Robert filed for divorce on January 26, 1999.

In early February 1999, the parties reconciled and Candace moved back into the marital home.  Unbeknownst to Candace, though, Robert filed a motion for summary judgment in the divorce case on March 3, 1999.  Robert's motion requested enforcement of a purported August 9, 1995 antenuptial agreement ("Agreement").  The Agreement substantially limited the assets to which Candace would otherwise be entitled under New Jersey law if

the marriage ended.  Although Robert certified that the Agreement had voluntarily been entered into by both parties, the signature on the Agreement was not Candace's.  Candace never received notice of Robert's motion to enforce the Agreement.

On April 27, 1999, Comparri - a friend of Robert's — filed an affidavit of service stating that he had served a summons and copy of the divorce complaint on Joan Demarco, Candace's mother, on April 21, 1999.  However, neither Candace nor her mother ever received the papers.

On May 13, 1999, having found that Candace had notice of the proceedings and that Candace and Robert had voluntarily entered into the Agreement, the Honorable Max A. Baker ordered that the Agreement was enforceable and would remain in full force and effect.

On June 8, 1999, Robert requested that the Agreement be incorporated into a final judgment of divorce.  Although Candace never received notice of the request, a return receipt for the notice was signed by Gatto, an employee of Robert, on June 9, 1999.

On July 2, 1999, Judge Baker entered a final judgment of divorce.  Judge Baker found that Candace had been served with the summons and complaint on April 21, 1999.  Once more finding that Candace and Robert had freely and voluntarily entered into the Agreement, Judge Baker ordered that Candace and Robert were

divorced and that the Agreement would be part of the final divorce judgment.

Candace never received a copy of the final order of divorce. A return receipt for the final order was signed on August 3, 1999 by Joseph Capoferri, Robert's brother and employee.

Candace learned for the first time that she was divorced, and that equitable distribution had been adjudicated, on July 19, 2001. She now argues that the defendants intentionally prevented her from receiving notice of the divorce proceedings and appearing therein to defend her financial interests. Further, she alleges, Robert intentionally caused a fraudulent antenuptial agreement to be incorporated into the final judgment of divorce. Candace demands money damages from the defendants under theories of fraud, conversion, conspiracy, and accomplice liability.

II.      **ROOKER-FELDMAN**

In support of his motion to dismiss, Robert first argues that the Rooker-Feldman doctrine precludes this Court from exercising jurisdiction in this case. According to several recent Third Circuit cases, that doctrine "bars federal jurisdiction under two circumstances: if the claim was 'actually litigated' in state court or if the claim is 'inextricably

intertwined' with the state adjudication." _ITT Corp. v. Intelnet Int'l Corp._, 366 F.3d 205, 210 (3d Cir. 2004); _see Desi's Pizza, Inc. v. City of Wilkes-Barre_, 321 F.3d 411 (3d Cir. 2003). According to Robert, Candace's claims are "inextricably intertwined" with the parties' divorce in state court.

However, in March 2005, the Supreme Court clarified that the _Rooker-Feldman_ doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." _Exxon Mobil Corp. v. Saudi Basic Indus. Corp._, 125 S. Ct. 1517, 1521-22 (2005). The doctrine "merely recognizes that 28 U.S.C. § 1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments, which Congress has reserved to [the Supreme Court] . . . ." _Verizon Md. Inc. v. Pub. Serv. Comm'n of Md._, 122 S. Ct. 1753, 1759 n.3 (2002) (citing 28 U.S.C. § 1257(a)); _see Exxon Mobil_, 125 S. Ct. at 1526. Thus, the doctrine applies only to those cases in which the "loser in state court invites [the] federal district court to _overturn_ [the] state-court judgment." _Id._ at 1524 n.2 (emphasis added).

While _Rooker-Feldman_ precludes a district court from

5

overturning a state-court judgment, it does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." See Exxon Mobil, 125 S. Ct. at 1527. "If a federal plaintiff 'presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" Id. (quoting GASH Assocs. v. Village of Rosemont, 995 F.2d 726, 728 (7th Cir. 1993)).

        Here, Candace's complaint does not invite this Court to exercise appellate jurisdiction over the state divorce proceeding and the collateral remedies awarded therein under New Jersey family law.  Rather, the complaint presents independent claims under state law theories of fraud, conversion, conspiracy, and accomplice liability.  Although Candace's claims may require findings (1) that Candace lacked notice of the state proceedings and (2) that the Agreement was invalid, and although the state court explicitly found otherwise (see Def.'s Br. Exs. K, L, O), "[p]reclusion . . . is not a jurisdictional matter."[2] See Exxon Mobil, 125 S. Ct. at 1527.  Because the Amended Complaint

_____

        [2] This Court expresses no opinion as to whether res judicata or collateral estoppel apply to bar Candace's claims.

presents independent claims rather than inviting this Court to exercise appellate jurisdiction over the state proceedings, Rooker-Feldman does not preclude this Court from exercising subject matter jurisdiction over Candace's claims.  Thus, Robert's first argument fails.


**III.       DOMESTIC RELATIONS AND STATE LAW**

Second, Robert argues that the Amended Complaint should be dismissed because "domestic relations are governed by state law."  However, Robert cites only one case in support of his argument, and that case is inapposite.  See Boggs v. Boggs, 117 S. Ct. 1754, 1758 (1997) (holding that ERISA preempted "a state law allowing a nonparticipant spouse to transfer by testamentary instrument an interest in undistributed pension plan benefits").

Candace's complaint does not invite this Court to decide issues of marital status, alimony, or custody.  Compare In re Burrus, 10 S. Ct. 850 (1890) (holding that the federal courts lack jurisdiction over custody disputes).  Rather, it invites this Court to decide tort claims, albeit ones that arose against the backdrop of a domestic relations dispute, and some that are brought by one former spouse against another.  Robert cites no caselaw for the proposition that the federal courts may not exercise diversity jurisdiction under such circumstances.  Therefore, Robert's second argument fails.

IV.      **REMEDY IN THE STATE COURTS**

Third, Robert argues that the Amended Complaint should be dismissed because Candace might obtain a remedy in the New Jersey courts.  However, Robert cites no caselaw for the proposition that federal diversity jurisdiction is limited to cases in which no remedy might be had in state court.  Therefore, Robert's third argument fails.


V.       **STATUTE OF LIMITATIONS**

Fourth, Robert argues that Candace's claims are barred by N.J.S.A. 2A:14-2, which provides a two-year statute of limitations on tort claims for "an injury to the person." However, Candace's claims are not for injuries to her person. Rather, her claims are for injuries to her property, for which New Jersey law provides a six-year statute of limitations.  <u>See</u> N.J.S.A. 2A:14-1.  Therefore, Robert's fourth argument fails.


VI.      **CONCLUSION**

Comparri's motion to join in Robert's motion will be granted.  Robert's motion to dismiss (in which Comparri joins) will be denied.  The accompanying Order shall issue today.


Dated:   <u>   July 1, 2005            </u>   <u>/s/ Robert B. Kugler       </u>
                                     ROBERT B. KUGLER
                                     United States District Judge